**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STUDENT 1, *et al.*,<br><br>                    Plaintiffs,<br><br>      v.<br><br>KRISTI NOEM, *et al.*,<br><br>                    Defendants. | Civil Action No. 25-2871 (GC) (JTQ)<br><br>**OPINION** |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court upon further consideration of Plaintiffs' Motion for a Temporary Restraining Order (TRO), Expedited Hearing for a Preliminary Injunction, and to Proceed Under Pseudonyms. (ECF No. 2.) On April 23, 2025, the Court granted Plaintiff's Motion for a TRO and request to proceed under pseudonyms, (ECF No. 11), and subsequently set a briefing schedule and hearing date in regard to the preliminary injunction (ECF Nos. 22, 25, 27). Defendants opposed, and Plaintiffs replied. (ECF Nos. 26, 28.) On May 6, 2025, the Court held oral argument. (ECF No. 31.) The Court has carefully considered the parties' submissions and arguments. For the reasons set forth below, and other good cause shown, Plaintiffs' Motion (ECF No. 2) is **GRANTED**, and the TRO is converted into a Preliminary Injunction.

# I.    BACKGROUND[1]

## A.    The F-1 Visa Program and SEVIS

Plaintiffs are nine international students who came to the United States via an F-1 visa issued by the United States Department of State.  (ECF No. 1 ¶¶ 3-11.)  Under the Immigration and Nationality Act (INA), "nonimmigrant students" such as Plaintiffs, are permitted to enter the United States on an F-1 visa to attend schools approved under the Department of Homeland Security (DHS)'s Student Exchange Visitor Program (SEVP).[2]  *See* 8 C.F.R. §§ 214.1(a)(2) (delineating classification designations, including "F-1"); 214.3 (articulating regulatory requirements for SEVP certified schools).  Each school employs a Designated School Official (DSO) tasked with overseeing international students.  *See* 8 C.F.R. §§ 214.2(f); 214.3(a).  All information regarding F-1 students is tracked via the Student and Exchange Visitor Information System (SEVIS), a centralized database maintained by SEVP.  8 U.S.C. § 1372 (requiring program to collect information); 8 C.F.R. § 214.2(g) (enumerating SEVP-certified schools' recordkeeping requirements).  Upon entry to the United States, the student must present the Form I-20, which is "issued in the student's name by a school certified by SEVP for attendance by F-1 foreign students."[3]  8 C.F.R. § 214.2(f)(1)(i)(A).

---

[1]    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

[2]    Under the INA, "nonimmigrant" visas are for foreign nationals seeking to come into the country temporarily for a specified purpose, such as education, tourism, or business.  *See* 8 U.S.C. § 1201.  "Immigrant" visas are for foreign nationals intending to move to the United States permanently.  *Id.*; *Gjoci v. Dep't of State*, Civ. No. 21-00294, 2021 WL 3912143, at *1 (D.D.C. Sept. 1, 2021).

[3]    The I-20 is endorsed at the time of entry into the United States, and the F-1 student is tasked with "retain[ing] for safekeeping the initial Form I-20 or successor form bearing the admission number and any subsequent Form I-20 issued to them."  8 C.F.R. § 214.2(f)(2).

While a visa allows entry into the United States, it is a foreign national's immigration *status* that governs their ability to stay. *See* 8 C.F.R. §§ 214.1(a)(3); 214.2(f)(5).[4] Students that DHS classifies as having F-1 status are authorized to remain in the United States while pursuing a full course of study or participating in one of the two authorized training programs allowed under the regulations. 8 C.F.R. § 214.2(f)(5)(i). The first, Curricular Practical Training (CPT), is an alternative work/study, internship, or practicum that is incorporated into the student's curriculum. *Id.* § 214.2(f)(10)(i). The other program, Optional Practical Training (OPT) is a traditional job "directly related" to a student's area of study. *Id.* § 214.2(f)(10)(ii). F-1 students enrolled in OPT may extend their visa for an additional fourteen months after graduation or, for STEM students, an additional three years. *Id.* § 214.2(f)(10)(ii)(A)-(C).

If an F-1 student loses their status, they are required to immediately leave or seek reinstatement. *Id.* § 214.2(f)(5)(iv).[5] This loss of status occurs in two separate scenarios.

*First*, a student may "fail to maintain" their status by violating one of the governing regulatory requirements. *See Id.* § 214.2(f). Such violations include unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than one year. *Id.* § 214.2(f)(16); 8 C.F.R. § 214.1(g). University DSOs are required to report any F-1 student's failure to maintain status to SEVP via SEVIS. 8 C.F.R. §

---

[4]    As another district court aptly explained, "the F-1 student visa refers only to the document that nonimmigrant students receive to enter the United Status, whereas F-1 student status refers to the students' formal immigration classification once they enter the country." *Doe 1 v. Bondi*, Civ. No. 25-1998, 2025 WL 1188469, at *2 (N.D. Ga. Apr. 18, 2025).

[5]    The regulations state "[a]n F-1 student who has completed a course of study and any authorized practical training following completion of studies will be allowed an additional 60-day period to prepare for departure from the United States or to transfer in accordance with paragraph (f)(8) of this section.… However, an F-1 student who fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status is not eligible for an additional period for departure." 8 C.F.R. § 214.2(f)(5)(iv).

214.3(g)(2).  If a student's request for reinstatement is not granted, there is no right to appeal.  *Id.*
§ 214.2(f)(16)(ii).

*Second*, DHS may affirmatively terminate an F-1 student's status.  DHS's ability to do so,
however, is "limited by [8 C.F.R.] § 214.1(d)."  *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*,
935 F.3d 172, 185 n.100 (3d Cir. 2019).  Under 8 C.F.R. § 214.1(d), DHS may only terminate a
student's status when (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked;
(2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS
published a notification in the Federal register identifying national security, diplomatic, or public
safety reasons for termination.  8 C.F.R. § 214.1(d).

As previously noted, the revocation of a visa and the termination of a SEVIS status record
are separate processes.  And, per Immigration and Customs Enforcement (ICE) policy, a "[v]isa
revocation is not, in itself, a cause for termination of the student's SEVIS record."  ICE Policy
Guidance 1004-04 – Visa Revocations (June 7, 2010).  Thus, a student with otherwise valid F-1
status may continue to study in the United States even if their F-1 visa is revoked.  *See* U.S. Dep't
of State Guidance Directive 2016-03, 9 FAM 403.11-3—VISA REVOCATION (Sept. 2, 2016).  If
that student leaves the United States and attempts to return, however, they may be denied re-entry.

## B.    Factual Background

Plaintiffs are nine students from China, Korea, India, and Nepal who attend various
academic institutions or are working under OPT across the country.  (ECF No. 1 ¶¶ 3-11.)
Defendants are the Secretary of DHS, Kristi Noem; the Acting Director of U.S. Immigration and
Customs Enforcement, Todd Lyons; and the Attorney General of the United States, Pam Bondi.
(*See generally* ECF No. 1.)  Plaintiffs initiated this lawsuit after receiving notification that their
SEVIS records and I-20s were terminated by DHS.  (*Id.* ¶¶ 15-51.)  Most, but not all, Plaintiffs
also had their visas revoked, either simultaneously or in the days following the SEVIS status

termination.  (ECF No. 1; ECF Nos. 1-1 to 1-9.)  Along with the notice of termination, DHS provided some Plaintiffs with an explanation that their SEVIS status was revoked because they were "identified in criminal records" and/or because their visa was revoked.  (ECF No. 1; ECF Nos. 1-1 to 1-9.)  Many of the Plaintiffs were also instructed to depart the United States immediately.  (ECF No. 1; ECF Nos. 1-1 to 1-9.)

### 1.    Student 1

Student 1 (S1), a Chinese citizen, is a recent University of Wisconsin graduate who is currently enrolled in OPT in New Jersey.  (Ex. A, ECF 1-1 ¶¶ 1-3.)  S1 declares that, on April 8, 2025, they received notification that DHS had terminated their SEVIS record and I-20.  (*Id.* ¶ 4.)  Two days later, S1's visa was revoked.  (*Id.*)  "The stated reason for this termination was individual identified in criminal records and/or has had their VISA revoked," and S1 was told to leave the country immediately.  (*Id.* ¶¶ 4, 7.)  S1 asserts that the termination appears to have been triggered by their involvement in a February 20, 2025 verbal dispute that resulted in their arrest.  (*Id.* ¶ 5.)  On March 25, 2025, the case was dismissed with no conviction and the records were sealed.  (*Id.*)  S1 declares that they have not been convicted of a crime, nor have they violated the terms of their visa.  (*Id.* ¶¶ 5-6.)  Due to the status termination, S1 has lost their job and is experiencing a "critical financial crisis."  (*Id.* ¶ 8.)  Because they were unable to properly pass off their responsibilities at work, S1's employer, a vendor for the New Jersey State Government, has also faced operational and financial losses.  (*Id.*)  S1 has also "experienced acute depression that has severely disrupted [their] eating and sleeping patterns," and faces "substantial legal and administrative costs" in seeking to restore their status.  (*Id.*)

### 2.    Student 2

Student 2 (S2) is a Korean citizen currently enrolled as a third-year law student at Cornell Law School.  (Ex. B, ECF 1-2 ¶¶ 1-3.)  On April 8, 2025, DHS informed S2 that their SEVIS

record and I-20 were revoked due to criminal activity, and instructed S2 to leave the country immediately. (*Id*. ¶¶ 4, 7.) S2 disclosed that, in 2014, they were pulled over for driving without their headlights on. (*Id*. ¶ 5.) During the stop, law enforcement informed S2 that their driver's license had been suspended due to an unpaid speeding ticket from 2013. (*Id*.) After paying a fine, S2's driver's license was reinstated. (*Id*.) S2 declares that they have not been convicted of a crime, nor have they violated the terms of their visa. (*Id*. ¶¶ 5-6.) S2 returned to Korea after receiving DHS's instruction to depart the country. (*Id*. ¶ 8.) Therefore, S2 is unable to attend classes in person, will miss graduation, and cannot return to the United States "to follow [their] goal of working as a lawyer in America." (*Id*.) S2 states that they are experiencing stress, anxiety, and emotional distress. (*Id*.)

### 3.    Student 3

Student 3 (S3), an Indian citizen, is a recent graduate of the University of Michigan who is currently enrolled in OPT. (Ex. C, ECF 1-3 ¶¶ 1-3.) On April 4, 2025, the University of Michigan DSO emailed S3 stating that DHS "terminated" their SEVIS record. (*Id*. ¶ 4.) The reason noted was "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked." (*Id*.) DHS instructed S3 to depart the United States immediately. (*Id*. ¶ 7.) Three days later, on April 7, 2025, S3 received an email from the U.S. Embassy in Mumbai stating that S3's visa had been revoked due to "additional information [that] became available after [the] visa was issued." (*Id*. ¶ 4.) S3 states that they have not been convicted of a crime, nor have they violated the terms of their visa. (*Id*. ¶¶ 5-6.) However, on May 9, 2024, S3 states that they were stopped for speeding near Flagstaff, Arizona. (*Id*. ¶ 5.) S3 was arrested, charged with criminal speeding, and had their fingerprints taken. (*Id*.) After hiring a lawyer, the Court dismissed the criminal charge. (*Id*.) S3 was given a speeding ticket, which they paid, and completed a driver's responsibility class. (*Id*.) S3 states that as a result of the status termination,

they have lost their job and are suffering from stress, insomnia, and fears about their future and career.  (*Id*. ¶ 8.)

### 4.    *Student 4*

Student 4 (S4) is a Nepalese citizen currently enrolled at Dallas College in Dallas, Texas. (Ex. D, ECF 1-4 ¶¶ 1-3.)  On April 10, 2025, S4 learned that their SEVIS record and I-20 were revoked by DHS.  (*Id*. ¶ 4.)  The reason noted was "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked." (*Id*.)  The notice from DHS instructed S4 to depart immediately.  (*Id*. ¶ 7.)  S4 declares that they did not violate the terms of their visa.  (*Id*. ¶ 6.)  However, S4 states that they did plead to a public intoxication misdemeanor on October 31, 2023, and paid a $492 fine.  (*Id*. ¶ 5.)  There was no jail or probationary sentence.  (*Id*.)  S4 states that they did not violate the terms of their visa and are currently suffering from significant uncertainty regarding the future of their career and mental stress.  (*Id*. ¶ 8.)

### 5.    *Student 5*

Student 5 (S5), an Indian citizen, is a recent graduate of the University of Central Oklahoma.  (Ex. E, ECF 1-5 ¶¶ 1-2.)  S5 currently resides in Oklahoma and is enrolled in STEM OPT.  (*Id*. ¶¶ 2-3.)  On April 7, 2025, S5 received notice that their visa was terminated and, separately, that DHS had revoked their SEVIS record and I-20 based on the visa termination due to "additional information [that] became available after [the] visa was issued."  (*Id*. ¶ 4.)  DHS instructed S5 to leave the United States immediately.  (*Id*. ¶ 7.)  S5 states that they did not violate the terms of their visa.  (*Id*. ¶ 6.)  On February 9, 2023, they pleaded guilty to a misdemeanor of eluding police and driving without a driver's license.  (*Id*. ¶ 5.)  S5 explains that they had just arrived in the United States and was "not familiar how to properly handle being pulled over by a police officer."  (*Id*.)  The case was dismissed with a fine, and S5 served no jail or probationary

sentence. (*Id*.) S5 states that the job offer they received has been rescinded, along with the company's promise to sponsor S5 for an H-1B visa. (*Id*. ¶ 8.) S5 states that the series of events has left them emotionally distressed. (*Id*.)

### 6. *Student 6*

Student 6 (S6), a Chinese citizen, is a recent University of California, Davis graduate who is currently enrolled in OPT. (Ex. F, ECF 1-6 ¶¶ 1-3.) On April 4, 2025, S6 received notification that their SEVIS record was revoked. (*Id*. ¶ 4.) The notice did not contain a reason for termination, but it instructed S6 to leave the United States immediately. (*Id*. ¶¶ 5, 7.) S6 states that they did not violate the terms of their visa. (*Id*. ¶ 6.) In November 2024, S6 was detained for shoplifting after briefly stepping outside with some unpaid groceries to access better cell service. (*Id*. ¶5.) S6 completed a pretrial diversion program and no charges were filed. (*Id*. ¶ 5.) Because of the status termination, S6 lost their job and income. (*Id*. ¶ 8.) S6 states that "the idea of accruing unlawful presence creates immense anxiety and emotional distress" and they fear that they could "be detained by ICE at any time." (*Id*.)

### 7. *Student 7*

Student 7 (S7), an Indian citizen, is a recent graduate of Northwest Missouri State University currently residing in North Carolina on OPT. (Ex. G, ECF 1-7 ¶¶ 1-3.) On April 2, 2025, S7 received notification that their SEVIS record and I-20 were revoked. (*Id*. ¶ 4.) The stated reason was "OTHERWISE FAILING TO MAINTAIN STATUS - Individual identified in criminal records check and/or has had their VISA revoked." (*Id*.) S7 states that, while they did not violate the terms of their visa, they were instructed to depart the United States immediately. (*Id*. ¶¶ 6-7.) In 2022, S7 states that they were charged with a local ordinance violation for supplying alcohol to a minor without verifying identification. (*Id*. ¶ 5.) While S7 initially pled guilty, they withdrew the guilty plea after obtaining a lawyer. (*Id*.) The case was subsequently dismissed. (*Id*.) S7

states that they have been living in "constant fear and anxiety" and feels as if their "big dreams . . . are slipping away." (*Id*. ¶ 8.) S7 is engaged to be married but states they have since put those plans on hold due to the uncertainty regarding their legal status. (*Id*.) S7 also planned to pursue a Ph.D. in the United States, and no longer knows if that is possible. (*Id*.)

### 8.    Student 8

Student 8 (S8), an Indian citizen, is a recent graduate of Oklahoma City University and currently enrolled in OPT. (Ex. H, ECF 1-8 ¶¶ 1-2.) On April 4, 2025, S8 received notification that their SEVIS record and I-20 were revoked due to "criminal activity." (*Id*. ¶ 3.) S8 states that they did not violate the terms of their visa. (*Id*. ¶ 5.) However, in 2024, S8 was charged with giving an alcoholic beverage to a person under the age of 21. (*Id*. ¶ 4.) S8 states that after completing 20 hours of community service and an "Impact Panel course," the court dismissed the charges. (*Id*.) S8 states that they have "lost [their] ability to work in [their] profession." (*Id*.) S8 fears deportation and is suffering from "extreme emotional distress." (*Id*.)

### 9.    Student 9

Student 9 (S9), a citizen of India, is a student at Midway University in Kentucky and currently enrolled in OPT. (Ex. I, ECF 1-8 ¶¶ 1-2.) On April 4, 2025, S9 received notification that their SEVIS record and I-20 were revoked due to criminal activity. (*Id*. ¶ 4.) S9 states that they did not violate their visa but was told by DHS to depart immediately. (*Id*. ¶¶ 6-7.) S9 received a speeding ticket in Lexington, Kentucky in 2024 which was dismissed after S9 challenged it in court. (*Id*. ¶ 5.) S9 states that, due to DHS's actions, they will not be able to attend graduation. (*Id*. ¶ 8.) S9 has also lost their job, has no other income, and is facing financial insecurity. (*Id*.)

### C.    Procedural Background

Plaintiffs filed this action on April 18, 2025, against Kristi Noem, in her official capacity as DHS Secretary; Todd Lyons, in his official capacity as Acting ICE Director; and Pam Bondi, in

her official capacity as Attorney General. (ECF No. 1 ¶¶ 12-14.) The same day, Plaintiffs also filed an Emergency Motion for a Temporary Restraining Order, Expedited Hearing for a Preliminary Injunction, and to Proceed Under Pseudonyms. (ECF No. 2.) On April 23, 2025, the Court granted Plaintiff's Motion for a Temporary Restraining Order and request to proceed under pseudonyms, (ECF No. 11), and subsequently set a briefing schedule and hearing date regarding the preliminary injunction (ECF Nos. 22, 25, 27).

Plaintiffs seek declaratory and injunctive relief, alleging that Defendants' termination of their SEVIS records were in violation of Plaintiffs' procedural due process rights under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq*., and the Fifth Amendment of the United States Constitution.[6] (ECF No. 1 ¶¶ 52-70.) Specifically, Plaintiffs request that the Court extend the restraints provided by the TRO including:

- Allow Plaintiffs to [continue to] proceed . . . under pseudonyms [until further order of the Court];

- Prohibit Defendants from terminating any Plaintiffs' F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which each Plaintiff will be entitled to review any adverse evidence and respond to such evidence prior to determining anew that any Plaintiff's F-1 student status should be terminated; and

- Prohibit Defendants from arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of any Plaintiff out of this Court's jurisdiction or the United States, without first providing adequate notice to both this Court and Plaintiff's counsel as well as time to contest any such action.[7]

---

[6]     The Complaint also asserts that Defendants violated Plaintiffs' Sixth Amendment right to a fair trial. (ECF No. 1 ¶¶ 71-76.) However, Plaintiffs do not seek consideration of their Sixth Amendment claim for purposes of the Preliminary Injunction.

[7]     Plaintiffs have made clear in both their Complaint and at the May 6, 2025 hearing that they are not seeking any relief with regards to the termination of their visas. (*See* ECF No. 31.)

[(ECF 2-1 at 5.[8])]

Defendants opposed, and Plaintiffs replied. (ECF Nos. 26, 28.) On May 5, 2025, Defendants filed a notice regarding ICE's new policy, dated April 26, 2025 (April 26th SEVP memo) which announces that the State Department's revocation of an F-1 visa may serve as a basis for termination of an F-1 student's SEVIS records. (ECF No. 30.) The Court held oral argument and extended the TRO for an additional 14 days on May 6, 2025. (*See* ECF Nos. 31, 32.)

On May 13, 2025, Defendants filed a letter confirming the restoration of Plaintiffs' SEVIS records. (ECF No. 33.) Defendants attached two declarations to the letter: (1) a declaration from Andre Watson, Assistant Director of the National Security Division for Homeland Security Investigations (Watson Declaration); and (2) a declaration from Michelle Young, who is employed by U.S. Citizenship and Immigration Services (USCIS) as the Associate Portfolio Director with the Service Center Operation (SCOPS) Student, Appeals, Family and Employment (SAFE) Portfolio (Young Declaration). (*Id.*)

The Watson Declaration provides that "[b]eginning in March of 2025, ICE reviewed and terminated numerous SEVIS records due to information provided by U.S. Department of State and criminal databases [and that] . . . ICE has re-activated SEVIS records for plaintiff(s) who met [those] parameters[.]" (ECF No. 33-2 ¶ 4.) Watson declares that ICE's re-activation has been made retroactive to the date of the initial termination so there is no gap in Plaintiffs' records. (*Id.* ¶ 7.) Furthermore, Watson states that ICE has no plans under the new SEVIS policy to re-terminate

---

[8]      Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

SEVIS records "based solely on the [law enforcement database] record that led to its initial termination." (*Id*. ¶ 6.)

The Young Declaration states that she is "aware that on or around April 10, 2025, [ICE] terminated records of certain F-1 nonimmigrants in SEVIS." (ECF No. 33-3 ¶ 6.) However, Young contends, "USCIS does not equate SEVIS record termination with termination of an alien's F-1 nonimmigrant status." (*Id*. ¶ 7.) To the extent Defendants are arguing that there is a distinction between the termination of a student's SEVIS record and their F-1 status, the Court declines to consider such an argument at this juncture given that Defendants did not include it in their initial briefing, nor have Plaintiffs been given an opportunity to respond. [9]

## II.    <u>LEGAL STANDARD</u>

Preliminary injunctive relief "is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted). A primary purpose of a preliminary injunction is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994).

A plaintiff seeking a preliminary injunction must establish that (1) they are reasonably

---

[9]    The Court also notes that other district courts have overwhelmingly rejected similar arguments. *See, e.g., Doe v. Noem*, Civ. No. 25-00023, 2025 WL 1399216, at *9-10 (W.D. Va. May 14, 2025) ("This *post-hoc* distinction [between the plaintiff's SEVIS record and their F-1 status] offends common sense. . . . [The email update] communicated in quite clear terms that Defendants terminated Doe's SEVIS record *because* his F-1 status was terminated."); *Student Doe #1 v. Trump*, Civ. No. 25-4188, 2025 WL 1341711, at *10 (N.D. Ill. May 8, 2025) (rejecting the Defendants' contention that "they terminated only Plaintiffs' SEVIS records, not [the plaintiffs'] F-1 status" as an "assertion [that] disregards reality"); *Isserdasani v. Noem*, Civ. No. 25- 283, 2025 WL 1330188, at *6 (W.D. Wis. May 7, 2025) (stating that "[n]one of defendants' arguments are persuasive," and that differentiating between the termination of SEVIS records and F-1 status is "semantics"); *Doe v. Noem*, No. 2:25- 01103, 2025 WL 1134977, at *6 (E.D. Cal. Apr. 17, 2025) (stating that the defendants' decision to terminate the plaintiff's SEVIS record "effectively terminat[ed] his F-1 status").

likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3rd Cir. 2017); *see also HR Staffing Consultants, LLC v. Butts*, Civ. No. 15-3155, 2015 WL 3492609, at *7 (D.N.J. June 2, 2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  If a plaintiff meets the first two factors, the court "then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly*, 858 F.3d at 179.  The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"Because a 'preliminary injunction is an extraordinary and drastic remedy,' the movant bears the burden of making '*a clear showing*.'" *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original).

## III.  DISCUSSION

### A.  Likelihood of Success on the Merits[10]

To demonstrate a likelihood of success on the merits, "[a p]laintiff must show that [it] 'can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not).'" *Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 342 (D.N.J. 2020) (citing *Reilly*, 858 F.3d at 179).  Thus, a moving party must only show a "reasonable probability of eventual success in the litigation." *Reilly*, 858 F.3d at 176.  "[W]hether a party has

---

[10]     In a footnote, Defendants state that they "*may* move to dismiss 8 of the 9 students in this matter for improper venue, or in the alternative, to transfer to a district with proper venue[.]"  (ECF No. 26 at 8 n. 1) (emphasis added.)  Given that Defendants have provided no substantive arguments in support of an improper venue defense, the Court declines to address the issue at this time.

met this threshold will necessarily vary with the circumstances of each case . . . [and] the elements of the movant's claims. . . ." *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 77 (3d Cir. 2017).

Under the APA, federal agencies are required to engage in "reasoned decisionmaking" before taking any action.[11] *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Allentown Mack Sales & Service, Inc. v. NLRB,* 522 U.S. 359, 374 (1998). In actions brought under the APA, the court must determine whether an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To make that finding, courts "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).[12]

Plaintiffs argue that the termination of their SEVIS record and their F-1 status violates the APA. According to Plaintiffs, Defendants' proffered reasons for the terminations—the purported criminal activity and/or revocation of Plaintiffs' visas—do not constitute an appropriate legal basis for such actions under the pertinent statutes and regulations. As previously explained, SEVIS

---

[11]    Because the Court finds that Plaintiffs have established likelihood of success on their APA claim, the Court does not reach their Fifth Amendment Due Process claim at this time.

[12]    Under the APA, 5 U.S.C. § 704, courts only have jurisdiction over "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." As Plaintiffs correctly assert, Third Circuit precedent establishes that the termination of a student's SEVIS record and F-1 status is a final agency action subject to judicial review. *See Jie Fang*, 935 F.3d at 182. In a footnote, Defendants maintain that the termination is "not a final agency action for purposes of APA review but acknowledge[ ] the Third Circuit's decision in [*Jie Fang*]. Defendants note this argument solely to preserve the issue." (ECF No. 26 at 30, n.5.)

termination may occur under two general circumstances: (1) a student fails to maintain status, or (2) DHS terminates status based on the criteria set forth in the regulations. *See* 8 C.F.R. §§ 214.1(d); 214.2(f).

First, there is no evidence that Plaintiffs failed to maintain status. While an F-1 student's engagement in criminal activity can constitute a failure to maintain status, criminal activity is defined as instances where a student is "convict[ed]. . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). Based on the record, the "criminal activity" disclosed by Plaintiffs does not meet the requirements under the relevant regulations. *See Id.* In fact, there is no evidence in the record that any of the Plaintiffs have been convicted of a crime of violence. Second, Defendants' basis for termination does not comport with any of the requirements set forth in 8 C.F.R. § 214.1(d): There is no record of a waiver revocation, a private bill to confer permanent residence status, or notification in the federal register. *Id.* Therefore, the reasoning (or lack thereof) given by Defendants for the termination of Plaintiffs' SEVIS record fails to meet the criteria stated in the regulations.

Defendants, in their opposition, do not address the merits of Plaintiffs' arguments. Instead, they argue that sovereign immunity bars the Court from exercising jurisdiction over Plaintiffs' claims. (*See* ECF No. 26 at 30-38.) Defendants acknowledge that the APA generally waives sovereign immunity in cases "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." (*Id*. at 30-31.) 5 U.S.C. § 702. However, Defendants claim that APA Section 702 provides exceptions to the general immunity waiver, which states that "[n]othing herein . . .

confers authority to grant relief if *any other statute* that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702 (emphasis added).

Defendants contend that the "other statute" that is implicated—and bars Plaintiffs' APA suit—is the Privacy Act of 1974, 5 U.S.C. § 552a.  (ECF No. 26 at 32.)  The Privacy Act "was designed to provide individuals with more control over the gathering, dissemination, and accuracy of agency information about themselves."  *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 76 (D.C. Cir. 1982).  The Act reflected Congress' growing concern that the government's increasing accumulation of personal information was susceptible to abuse and inaccuracies.  *See* S. Rep. No. 93-1183, *reprinted in* 1974 U.S.C.C.A.N. 6916, 6920, 6926.

Accordingly, the statute authorizes civil actions by individuals who have been injured by an agency action based on an inaccurate record.  5 U.S.C. § 552a(g)(1).  In characterizing Plaintiffs' claims as seeking "a change to a SEVIS record," Defendants argue that the Privacy Act applies and provides Plaintiffs the sole remedy in this case.  According to Defendants, "[t]he completeness of the Privacy Act scheme to view, challenge, and seek amendment of records, and to pursue civil remedies in court if unsuccessful—shows that Congress intended the Privacy Act to provide the exclusive remedy for claims such as those advanced by Plaintiffs."  (ECF No. 26 at 33.)

Defendants' reasoning is misguided.  While the Privacy Act allows a person to contest the accuracy of government records, it also "supposes that there is a distinction between 'records' and 'decisions.'"  *Douglas v. Agric. Stabilization & Conservation Serv.*, 33 F.3d 784, 785 (7th Cir. 1994).  Although government records are involved in this case, Plaintiffs are not (as Defendants suggest) merely asserting that these records are inaccurate.  Instead, Plaintiffs "assert[ ] a grievance altogether different from the kind the [Privacy Act] concerns."  *Match-E-Be-Nash-She-Wish Band*

*of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012) (internal citations and quotations omitted). That is, that DHS' decision to terminate Plaintiffs' SEVIS records was unlawful under the applicable regulatory framework.

Accordingly, Plaintiffs are challenging the agency's substantive decision to terminate their F-1 status, not simply seeking to change what is reflected in the records. *See id*. (holding that when a statute "is not addressed to the type of grievance which the plaintiff seeks to assert, then the statute cannot prevent an APA suit") (internal citations and quotations omitted); *Bishop v. Off. of Pers. Mgmt*., 514 F. App'x 104, 105 (3d Cir. 2013) (affirming dismissal of Privacy Act claim because the plaintiff sought to "relitigate the merits of his termination" rather than correct personnel records); *Barnett v. United States*, 195 F. Supp. 3d 4, 7 (D.D.C. 2016) (stating that the Privacy Act is not "a vehicle for amending the judgments of federal officials . . . as those judgments are reflected in records maintained by federal agencies").[13] Therefore, the Privacy Act cannot be the exclusive remedy for Plaintiffs' grievance as the "Privacy Act does not permit a court to alter documents that accurately reflect an administrative action, no matter how contestable the conclusion may be." *Douglas*, 33 F.3d at 785.

Even assuming some overlap between the two laws exists, a recent Supreme Court decision counsels that "we approach federal statutes touching on the same topic with a 'strong presumption' that they can exist harmoniously." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024). The Court explained that "[o]nly by carrying a 'heavy burden' can a party convince us that one statute 'displaces' a second. *Id*. A District of Columbia court relied on *Kirtz* to find

---

[13]    Defendants' Privacy Act theory also ignores the Third Circuit's holding in *Jie Fang*. In that case, the Third Circuit established that a record correction is an insufficient form of relief for termination of a SEVIS record because "even if the students attempt to pursue the administrative procedures for reinstatement, there is no mechanism to review the propriety of the original termination order." *Jie Fang*, 935 F.3d at 182.

that "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA." *All. for Retired Ams. v. Bessent,* Civ. No. 25-0313, 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025). Thus, the Court agrees with Plaintiffs that the Privacy Act is not applicable to their claims.

Therefore, the Court finds that Plaintiffs have shown a likelihood of success on the merits based on the argument that Defendants' termination of their SEVIS records or status was contrary to the APA. Defendants have failed to provide the Court with any additional information regarding the reasons for the SEVIS terminations beyond the ambiguous language in the April 26th SEVP memo. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 48 (1983) ("We have frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner.") Based on the record, Plaintiffs maintained their status under the pertinent regulations, and none of the permitted legal grounds for termination under 8 C.F.R. § 214.1(d) are applicable. Thus, Plaintiffs are likely to show that Defendants' termination of their SEVIS records and F-1 status was arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law under the APA.

### B.    Irreparable Harm

In order to demonstrate irreparable harm, "the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc*., 882 F.2d 797, 801 (3d Cir. 1989). Here, Plaintiffs have demonstrated that they face several forms of irreparable harm in the absence of preliminary injunctive relief. Plaintiffs' declarations attest to continued unemployment, an inability to complete their education,

and the ongoing health challenges stemming from the threat of deportation.[14]  Multiple courts facing similar motions to enjoin the termination of students' F-1 status have recognized that the loss of timely academic progress alone is sufficient to establish irreparable harm.  *Doe v. Noem*, Civ. No. 25-00023, 2025 WL 1161386, at *6 (W.D. Va. Apr. 21, 2025); *Liu v. Noem*, Civ. No. 25-133, 2025 WL 1189760, at *2 (D.N.H. Apr. 10, 2025); *see also Doe v. Noem*, Civ. No. 25-00633, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025) (collecting cases holding that interruption of educational programs or progress, including loss of opportunity to participate in post-graduate education programs, can be irreparable harm).  Courts have also held that the loss of work authorization is an irreparable harm when "a plaintiff's work and immigration status are interlinked."  *See Student Doe 4 v. Lyons et al*., Civ. No. 25-00708, 2025 WL 1208072, at *9 (W.D. Wash. Apr. 25, 2025) (collecting cases).

In response, Defendants state that DHS has restored all of Plaintiffs' SEVIS records to active, and any allegation that DHS may terminate the records in the future is speculative.  (ECF No. 26 at 26.)  The Court disagrees.  Although Defendants reinstated Plaintiffs' SEVIS records, they only did so after the Court issued the TRO on April 23, 2025.  (*See* ECF No. 11.)  And while Defendants maintain that further restraints are unnecessary, they simultaneously fail to provide assurances that Plaintiffs' SEVIS records will not be terminated in the future in the absence of such restraints.  (*See* ECF No. 31.)

For example, on May 5, 2025, Defendants filed a notice regarding a new ICE policy that explicitly permits termination of a student's SEVIS record following a visa revocation.  (*See* ECF

---

[14]    As articulated by another district court, "[i]f Plaintiffs pursue coursework and employment without F-1 status on SEVIS, they violate federal immigration regulations.  But if they do not, they risk noncompliance with their obligations under the F-1 program."  *Yan Du, et al., v. United States Dep't of Homeland Sec.*, *et al*., Civ. No. 25-CV-644, 2025 WL 1220254, at *4 (D. Conn. Apr. 28, 2025).

No. 30-1 at 2.) ("If [the United States Department of State] revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect. . . ."). Such a policy presumably applies to the Plaintiffs here given that most saw their visas revoked alongside the termination of their F-1 status. Defendants May 13, 2025 filing does little to assuage the Court's concerns. While the Watson Declaration asserts that ICE has no plans to terminate any SEVIS records "based solely on the [law enforcement database] record that led to its initial termination," it provides no similar reassurances regarding termination based on visa revocation. (ECF No. 33-2 ¶ 6.) Based on Defendants' policy and representations to this Court, it appears that Plaintiffs' fears are neither speculative nor hypothetical.

Defendants also argue that the threat of removal, by itself, is not an irreparable harm. (*See* ECF No. 26 at 27) (citing *Nken*, 556 U.S. at 435.) Plaintiffs have not been served with a Notice to Appear, Defendants contend, nor have any immigration proceedings been initiated against them. (*Id*.) Furthermore, citing a Ninth Circuit case holding that "self-inflicted" harms "severely undermine[ ] a claim for equitable relief," Defendants suggest that "Plaintiffs are free to depart the United States on their own and avoid removal proceedings." *Id*. (citing *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024)). However, Plaintiffs are not solely asserting harms stemming from the threat of removal. Rather, they are pointing to derivative harms including the ability to finish their degrees, complete their postgraduate training, maintain financial stability, and attend graduations. (ECF Nos. 1-1 to 1-9); *see also Fang*, 935 F.3d at 184 ("[W]e do not think that any [student] should be forced to permanently endure remaining here with the threat of imminent removal and all of its attendant circumstances permanently hanging over their heads."). Furthermore, if Plaintiffs are removed—even if such removal is found to be improper—returning would be no easy feat.

Finally, without an injunction, Plaintiffs would accrue time as "out-of-status," which could hinder Plaintiffs' ability to reinstate their F-1 student status in the future. 8 C.F.R. § 214.2(f)(16)(i) (stating that USCIS "may consider" reinstating an out-of-status student if, among other requirements, the student has "not been out of status for more than 5 months").[15]  Once enough time has accrued, Plaintiffs would be subject to a three- or ten-year reentry bar.  *See* 8 U.S.C. § 1182(a)(9)(B).  Thus, other courts have found the accrual of out-of-status time to be an irreparable harm given that these lengthy re-entry bars are not subject to judicial review.  *See Garcia v. United States Customs & Border Prot*., Civ. No. 21-5468, 2021 WL 4815945, at *4 (C.D. Cal. Aug. 20, 2021) (granting preliminary injunction to prevent accrual of out-of-status time, and rejecting arguments that "voluntary" departure would render the harm not irreparable); *Guilford Coll. v. McAleenan*, 389 F. Supp. 3d 377, 387 (M.D.N.C. 2019) (finding that the plaintiffs were likely to suffer irreparable harm due to proposed new policy that could result in the plaintiffs being deemed out-of-status and therefore subject to a reentry bar); *Ruiz-Diaz v. United States,* Civ. No. 07-1881, 2008 WL 3928016, at *2 (W.D. Wash. Aug. 21, 2008) (stating that enjoining "the accrual of unlawful presence time" would "prevent irreparable harm to class members and their families").

Thus, the Court finds that Plaintiffs' harms are neither speculative nor hypothetical, particularly given that it is unclear whether the policy articulated in the April 26th SEVP memo is preliminary or final, and what effect the policy would have on Plaintiffs.

### C.    Balance of Harms and Public Interest

The third and fourth factors merge when the government is the opposing party.  *Nken*, 556 U.S. at 435.  In essence, the Court considers "the ramifications of the injunction" and whether it would "serve the public interest."  *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny*

---

[15]    As previously noted, USCIS's decision to deny reinstatement is unreviewable.

*Cnty.*, 39 F.4th 95, 109 (3d Cir. 2022). The Third Circuit has noted that "if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

The balance of equities weighs in favor of granting a preliminary injunction. As documented throughout, Plaintiffs are threatened with losing their access to education, career prospects, and legal status. Defendants, on the other hand, cite separation of powers concerns and the fact that immigration is traditionally a "sovereign prerogative." (*See* ECF No. 26 at 38-39.) The Court does not dispute the fact that immigration is largely an executive branch function. However, in overseeing and administering this country's immigration system, the executive branch must do so within the bounds of the law. *See Doe,* 2025 WL 1141279, at *9 ("The public has a vested interest in a federal government that follows its own regulations."); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is generally no public interest in the perpetuation of unlawful agency action. . . . To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.").

Therefore, the Court determines that the balance of equities weighs in favor of granting preliminary relief pending adjudication of the merits of Plaintiffs' claims.

### D.    Bond

Rule 65(c) requires a movant to provide security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the Court has discretion to waive the bond requirement when there is no risk of monetary loss to Defendants and the balance of equities weighs in its favor. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010). On

balance, the facts weigh in favor of waiving the bond requirement.  Therefore, the Court waives the bond requirement under Rule 65(c)

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, and other good cause shown, Plaintiffs' Motion for a Temporary Restraining Order, Expedited Hearing for a Preliminary Injunction, and to Proceed Under Pseudonyms, (ECF No. 2) is **GRANTED** and the TRO is converted into a Preliminary Injunction. An appropriate Order follows.


Dated: May 19, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE